`UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMY PETRONIS RAND and AMILAR
SECURITIES, LLC,

                    **Plaintiffs,**

v.                                              **Case No:  6:13-cv-200-Orl-31TBS**

DAVID FOSTER, ARTURO BENDEK, JORGE
BENDEK, ROBERT MEHLER, EDWARD
LACHCIK,

                    **Defendants.**

_____

## ORDER

       This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 46) filed by Defendants David Foster ("Foster"), Robert Mehler ("Mehler"), and Edward Lachcik ("Lachcik") (collectively, the "Movants") and the response in opposition filed by the Plaintiffs, Amy Petronis Rand ("Rand") and Amilar Securities, LLC ("Amilar").

       **I.**     **Background**

       According to the allegations of the Amended Complaint (Doc. 38), which are accepted in pertinent part as true for purposes of resolving this motion to dismiss, the instant suit revolves around Wireless NRG, LLC ("Wireless").  Wireless manufactures and distributes accessories for wireless devices such as the Apple iPad.  (Doc. 38 at 2).  Amilar bought a 12.5 percent interest in Wireless NRG in December 2011.  (Doc. 38 at 3).  At that time, the Movants were all Managing Members of Wireless NRG.  (Doc. 38 at 3).   The Amended Complaint does not specify the relationship, but Rand appears to be the principal of Amilar.

The Plaintiffs contend that Defendant Foster made numerous misrepresentations to Rand before Amilar purchased its interest in Wireles.  For example, Foster falsely claimed that numerous retail chains had either executed purchase orders for Wireless products or were ready to do so.  (Doc. 38 at 3-4).  Foster also misrepresented, among other things, the number of products Wireless had ready for market and the financial arrangements Wireless had with its suppliers and its sales representatives.  (Doc. 38 at 4-5).  Finally, the Plaintiffs contend that all of the Defendants breached their fiduciary duty to Wireless by doing the following:

    a.    Improper selection of the sole distributor of the product;

    b.    Charging above market rates for the product;

    c.    Improperly setting the price point for the products;

    d.    Failure to engage in productive marketing activities;

    e.    Improper financial accounting including continued large errors in financial statements;

    f.    Failure to conduct physical inventory of product;

    g.    Failure to conduct annual meetings;

    h.    Failure to maintain the appropriate company documents;

    i.    Paying improper salaries to managing members;

    j.    Entering into a potential merger agreement with Sputnik Enterprises, Inc. that is detrimental to Wireless;

    k.    Entering into a marketing agreement with Sputnik Enterprises, Inc. that is detrimental to Wireless;

    l.    Improper use of Wireless' funds for the managing members' personal benefit;

    m.    Violation of Rules and Regulations of the Securities and Exchange Commission;

    n.    Members taking improper distributions and accepting preferred returns.

(Doc. 38 at 7-8).

Rand and Amilar have brought suit for the benefit of Wireless, and Amilar has also brought suit on its own behalf.  In the Amended Complaint, the Plaintiffs assert the following claims: fraudulent inducement against Foster (Count I); violation of Florida's Blue Sky laws against Foster (Count II); violation of Section 10(b) of the Securities Exchange Act of 1934 against Foster (Count III); and a derivative action under Florida Statute § 608.601 against all Defendants (Count IV).  The Movants seek dismissal of all claims asserted against them.

## II.      Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The Court must also limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); see also *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level,  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007).  Conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (internal citations omitted).  "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   Analysis

### Count I and Count II

Foster contends that the Plaintiffs' allegations of fraudulent inducement fail to state a claim because some of the alleged statements cannot, as a matter of law, serve as the basis for a fraudulent inducement claim.  Foster points to some of the allegations made by the Plaintiffs that, in his view, constitute promises of future action or predictions, which generally cannot sustain a fraud claim.  *See, e.g.*, *Cavic v. Grand Bahama Development Co., Ltd.*, 701 F.2d 879, 883 (11th Cir. 1983) (stating that, to constitute actionable fraud, false representations must generally relate to existing facts rather than future actions or opinions).  However, Foster does not address all of the Plaintiffs' allegations.  Some of those allegations refer to misrepresentations of existing fact.  For example, the Plaintiffs allege that

> On March 5, 2012, Foster represented to Amilar by e-mail that the following companies had signed purchase orders for Wireless products when in fact they did not have executed purchase orders:
>
> 1.     Boscov's Department Store, LLC

    2.       Brookstone, Inc.

    3.       Costco Wholesale Corporation

    4.       HSN, Inc.

    5.       Fry's Electronics, Inc.

    6.       Ingram Micro, Inc.

    7.       Office Depot, Inc.

    8.       Staples, Inc. Best Buy Canada Ltd

    9.       Staples & Future Shops

    10.     TRIP Group

(Doc. 38 at 3-4).  Because the alleged misrepresentations quoted above clearly refer to existing facts, Foster is not entitled to dismissal of Count I even if one credits his assessment of the other alleged misrepresentations contained in the Amended Complaint.

Foster also argues that some of the Plaintiff's allegations in Count I do not satisfy the particularity requirements of Fed.R.Civ.P. 9(b).  However, as the passage quoted above demonstrates, the Plaintiffs have set forth the statements at issue, the person making the statements, the recipient of the statements, and the time and manner in which they were made.  The Plaintiffs also allege that Foster knew or should have known the statements were false when he made them (Doc. 38 at 7), that he made the statements to induce one of them to buy into Wireless NRG (Doc. 38 at 7), and that Amilar did so (Doc. 38 at 3).  This is sufficiently particular to satisfy Rule 9(b).  *See, e.g., Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Foster makes the same arguments as to Count II – *i.e.*, that some of the alleged misrepresentations concern future actions rather than existing facts and that they are insufficiently

specific.  Those arguments fail in regard to Count II for the same reasons they failed in regard to

Count I.

Count III

To state a claim for a violation of § 10(b) of the Securities Exchange Act of 1934, a

plaintiff must allege

> (1) the existence of a material misrepresentation (or omission), (2)
> made with scienter (i.e., "a wrongful state of mind"), (3) in
> connection with the purchase or sale of any security, (4) on which
> the plaintiff relied, and (5) which was causally connected to (6) the
> plaintiff's economic loss."

*Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010).  Alleged violations of

Section 10(b) that sound in fraud must also satisfy the particularity requirements of Fed.R.Civ.P.

9(b).  *Id.*  In addition, pursuant to the Private Securities Litigation Reform Act, to recover money,

private plaintiffs must "state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).

Foster contends that the Plaintiffs have not made the requisite showing with regard to (1)

his state of mind and (2) any causal connection between his alleged misrepresentations and any

harm they allegedly suffered.  As demonstrated in the preceding section, the Plaintiffs have set

forth a number of particularized allegations that Foster lied about the economic circumstances that

Wireless was in (such as by deliberately overstating the number of orders that had been placed for

its products) so as to induce the Plaintiffs to purchase a share of the company, which Amilar did.

The Plaintiffs also allege that they relied on Foster's misstatements, and that they suffered

damages as a result.  (Doc. 38 at 10).  Although not expressly stated in the Amended Complaint, it

is a reasonable inference that by relying on Foster's statements and making the purchase, Amilar

ended up with a share of a company that was less valuable than the one described by Foster.  The

foregoing is enough to state a claim for violation of Section 10(b).

Count IV

In Count IV, a derivative action under Florida Statute § 608.601, the Plaintiffs demand a full accounting of the books and records of Wireless NRG since November 2011, an inventory of all of Wireless NRG's "product and components," a copy of all documents executed in conjunction with a proposed merger between Wireless NRG and Sputnik, Inc., return of the Plaintiffs' investment to Wireless NRG, and such further relief as the Court deems proper. (Doc. 38 at 11). Foster, Mehler, and Lachcik argue that the Plaintiffs' purported derivative action is improper in that the Plaintiffs are seeking relief that would benefit them, individually, rather than Wireless NRG. (Doc. 47 at 8-9). It is true that, in a derivative action, the shareholder is seeking to enforce a cause of action held by a corporation or LLC, rather than by the individual shareholder or member. *See, e.g.*, *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95 (1991). However, the Movants have not cited any Florida authority requiring dismissal where the plaintiff in a derivative action seeks some form of relief to which he or she is not entitled.[1] Under Florida law, as a general rule "it is the facts alleged, the issues and proof, and not the form of the prayer for relief, which determine the nature of the relief to be granted." *Fontainebleau Hotel Corp. v. Walters*, 246 So. 2d 563, 566 (Fla. 1971).

In addition, although some of the forms of relief sought in Count IV appear to be unavailable in a derivative action, in that count the Plaintiffs also seek the return of the amount of their investment back to Wireless (as opposed to seeking its return to themselves). The return of that sum would clearly benefit the company rather than the Plaintiffs. And the Plaintiffs also request "[s]uch further relief as the Court deems just and proper," which could also encompass proper forms of relief. Accordingly, dismissal of Count IV is not warranted on these grounds.

---

[1] The Movants do not complain that the cause of action asserted in Count IV is improper, only the relief sought.

However, the Movants also incorporate the arguments raised in the Motion to Dismiss (Doc. 46) filed by their co-defendants, Arturo Bendek and Jorge Bendek.  The Court recently granted that motion in part, finding that Rand had not shown that she possessed standing to raise a derivative claim and that the allegations in Count IV were too vague to state a claim.  The same result should apply in regard to these Defendants.

**IV .**   **Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss (Doc. 46) is **GRANTED IN PART AND DENIED IN PART**.  Count IV is **DISMISSED WITHOUT PREJUDICE** as to these Defendants.  In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 3, 2013.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Parties